UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORNELIUS DELMAR STUBBS,

Plaintiff,

-against-

E. COLBY; ANTHONY M. MELE;
MULLER; FIGUEROA,

Defendants.

22-CV-8056 (LTS)

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently incarcerated at Wende Correctional Facility, brings this *pro se*

action under 42 U.S.C. § 1983, alleging that during his detention at Orange County Jail ("OCJ"),

Defendants violated his constitutional rights. By order dated November 15, 2022, the Court

granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of

fees.[1] For the reasons set forth below, the Court grants Plaintiff leave to file an amended

complaint within 60 days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious,

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480

F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks

subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any

of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been
granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

This action concerns Plaintiff's detention at OCJ in February 2022. He asserts several claims arising from his treatment by correctional staff, including Defendants Sergeant Colby, Colonel Anthony Mele, Officer Muller, and Sergeant Figueroa. The following facts are drawn from the complaint.

On February 7, 2022, Plaintiff's unit at the OCJ "was place[d] on keep lock[ ]."[2] (ECF 1, at 5.) Plaintiff's "cell was searched by S.O.G.," and correctional staff escorted Plaintiff "to the shower for a strip and frisk search." (*Id.*) The following day, correctional staff again searched Plaintiff's cell and strip-searched him. On February 10, 2022, correctional staff handcuffed Plaintiff and escorted him to the shower area while Defendant Muller searched Plaintiff's cell, removing his personal property, legal material, and his Bible. When Plaintiff asked Defendant Figueroa "for my bible back," Figueroa refused, informing Plaintiff that "this is above his pay rate and the call came from administrative Colonel [Defendant] Anthony M. Mele." (*Id.*) (internal quotation marks removed).

Two days after Muller removed Plaintiff's property, on February 12, 2022, correctional staff returned Plaintiff's property, but "numerous documents were missing so I denied all of them as a whole." (*Id.*) On February 14, 2022, Plaintiff again requested the return of his Bible, but his "request was denied." (*Id.*) He "then realized that I would no longer be able to receive my personal magazine bible and all my original copy of my personal letters legal work and legal

---

[2] All spelling, grammar, and punctuation are as in the original unless noted otherwise.

mail that was apprehended because of everything that[ ] was going on." (*Id.*) Plaintiff then

"signed those belonging out to my friend Nicole Shapiro." (*Id.*)

For four days, correctional staff denied Plaintiff a shower; they also refused his request to

call his lawyer.

Plaintiff grieved all these matters, and Defendant E. Colby "lied on the grievance saying

that property was returned after the investigation was done which nothing was returned to the

inmates." (*Id.*) Attached to the complaint is Colby's decision, in which he states, "[t]here was

reasonable cause to believe that there was dangerous contraband on your unit." (*Id.* at 14.) Based

on this belief, Colby continues, Plaintiff's unit was placed on "administrative lockdown until

such time that this contraband could be found." (*Id.*) Colby also states that Plaintiff's "items were

returned to you at the conclusion of the investigation . . . [and] [p]roperty that you requested to

be released was released to Nicole Shapiro on 02/18/2022." (*Id.*) Colby also determined that OCJ

complied with the New York State Minimum Standard 7005.2(b), which requires "showers in

special housing must be give at least 3 times per week." (*Id.*)

Plaintiff seeks money damages.

## DISCUSSION

### A.    Strip Search

Plaintiff's allegation challenging the strip searches conducted while staff searched his cell

is construed as a claim under the Fourth Amendment.

The protections under the Fourth Amendment "extend to prisoners and pretrial

detainees." *Holland v. City of New York*, 197 F. Supp.3d 529, 542 (S.D.N.Y. June 24, 2016)

(citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). "Regardless of who performs the search, a

visual body cavity search . . . is invasive: 'A strip search that involves a stranger peering without

consent at a naked individual, and in particular at the most private portions of that person's body,

is a serious invasion of privacy.'" *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016) (quoting

*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 344-355 (2012)

(Breyer, J., dissenting)). While correction officials can conduct "random searches" of prisoners

without having "reason to suspect a particular individual of concealing a prohibited item,"

*Florence*, 566 U.S. at 328, such searches must be "reasonably related to legitimate penological

interests," *Turkmen v. Hasty*, 789 F.3d 218, 260 (2d Cir. 2015). Thus, searches that involve

intentional humiliation, abuse, or invasive touching may violate the Fourth Amendment.

*Florence*, 566 U.S. at 339; *see also George v. City of New York*, Nos. 12-CV-6365, 13-CV-3511,

13-CV-3514 (PKC) (JLC), 2013 WL 5943206, at *7-8 (S.D.N.Y. Nov. 6, 2013) (where prisoners

alleged that strip searches were performed to humiliate and to "make a spectacle" of them, they

have adequately pled a Fourth Amendment claim) (internal quotation mark omitted).

Here, Plaintiff indicates that from February 7, 2022, to February 10, 2022, correctional

staff conducted three strip searches. He does not, however, name these officers, describe the

nature of the searches, or even indicate that he seeks any relief regarding these searches.

Accordingly, the Court grants him leave to assert a Fourth Amendment claim regarding these

searches. Should he seek to bring such a claim, he must name the officers who conducted these

searches and state facts detailing the nature of the searches.[3]

**B.    Cell Searches**

The complaint describes three cell searches, which the Court also construes as asserting a

claim under the Fourth Amendment. Generally, an individual in pretrial detention does not

possess a reasonable expectation of privacy in his prison cell, entitling him to the protection of

---

[3] As discussed below, if Plaintiff does not know the name of an officer, he may identify such officer as a John or Jane Doe Defendant.

the Fourth Amendment against unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 526 (1979).

Allegations that a search is harassment "unrelated to prison needs," however, may state a claim

for a violation of the Fourth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 517 (1984). Here,

Plaintiff's allegation that his cell was searched three times does not state a claim under the

Fourth Amendment because he has not stated that the cell searches were conducted for reasons

unrelated to security. For example, he attaches grievances to his complaint that expressly state

the purpose of the searches related to the belief that Plaintiff possessed contraband, and he does

not challenge that assessment here. Rather, Plaintiff objects to the removal of his property and

the failure of correctional staff to return his property, including his Bible.

Because it is unclear whether Plaintiff seeks to assert claims related to the cell searches,

the Court grants Plaintiff leave to state facts in support of such claims. Should he wish to pursue

a Fourth Amendment claim against Defendant Muller, Plaintiff must state facts suggesting that

Muller searched his cell for reasons unrelated to security at the OCJ.

## C.      Religion Claim

Because Plaintiff alleges that correctional staff confiscated his Bible, the Court construes

this allegation as asserting claims under the Free Exercise Clause of the First Amendment and

under Religious Land Use and Institutionalized Persons Act ("RLUIPA").

### 1.      The Free Exercise Clause

The Free Exercise Clause protects individuals from "indirect coercion or penalties on the

free exercise of religion [by government officials], not just outright prohibitions." *Lyng v. N.W.

Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988). For a Free Exercise claim, the

question at the pleading stage is whether the plaintiff has alleged facts showing that the

"defendant[] significantly interfered with [the plaintiff's] religious beliefs." *McEachin v.

McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004); *Jones v. Goord*, 435 F. Supp. 2d 221, 256

(S.D.N.Y. 2006) (noting that, in this Circuit, "a claim of 'significant[ ] interfere[nce] with . . . religious beliefs' is sufficient to state a constitutional claim.") (quoting *McEachin*, 357 F.3d at 203) (alterations in original)). There may, however, "be inconveniences so trivial that they are most properly ignored." *McEachin*, 357 F.3d at 203 n.6.

    **2.**    **RLUIPA**

    Under RLUIPA, the government may not "substantial[ly] burden" an institutionalized person's religious exercise unless the burden furthers a compelling governmental interest by the least restrictive means. *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009). RLUIPA provides institutionalized persons with "greater protection" to exercise their religious beliefs than the First Amendment. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) ("RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise."). A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord*, 520 F.Supp.2d 487, 498 (S.D.N.Y.2007) (citing, *inter alia*, *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir.1996)). Inconvenience alone is insufficient to establish a substantial burden. *Id.* (citing *Westchester Day School v. Village of Mamaroneck*, 379 F. Supp.2d 550, 557 (S.D.N.Y. 2005)).

    **3.**    **Analysis of First Amendment and RLUIPA Claims; Leave to Amend**

    Plaintiff alleges that correctional staff confiscated his Bible on February 7, 2022, and refused to return it. He also alleges that he believed he would no longer be permitted to receive his "personal magazine bible." (ECF 1, at 5.) It is unclear, however, if correctional staff ever returned his Bible or why Plaintiff believed staff would deny him his personal magazine bible. (*Id.*) He also does not state how the confiscation affected his ability to exercise his faith. The allegations are therefore insufficient to state viable claims under the First Amendment and

RLUIPA. The Court grants Plaintiff leave to amend his claims regarding the confiscation of his religious materials.

### D.      Right to Counsel Claim

The Court construes Plaintiff's allegation that correctional staff "refused a legal call to my lawyer" (ECF 1, at 5), as asserting a claim under the Sixth Amendment. Under the Sixth Amendment, pretrial detainees are entitled to counsel when charged with most crimes. *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001). If "prison regulations restrict[ ] pretrial detainees' contact with their attorneys," such regulations are "unconstitutional where they unreasonably burdened the [detainee]'s opportunity to consult with his attorney and to prepare his defense." *Id.* at 187 (internal quotation marks and citation omitted). Put another way, the "unreasonable interference with [an] accused person's ability to consult counsel is itself an impairment of the [Sixth Amendment] right. *Id.* at 185.

Here, Plaintiff does not state a claim under the Sixth Amendment regarding the alleged denial to call his lawyer. First, he does not state the underlying reason why he needed to speak to his lawyer at the time he requested, and whether it related to his criminal case or to his treatment at the OCJ. Second, assuming that he wished to speak to this lawyer about his criminal case, he does not allege facts showing that the denial of one phone call unreasonably interfered with his Sixth Amendment right, or state whether correctional staff continued to deny him access to his lawyer, or why, at that time, he needed to speak with his lawyer in preparation for his defense. The Court therefore grants Plaintiff leave to state facts in support of his Sixth Amendment right to counsel claim.

### E.      Confiscation of Legal Papers Claim

Plaintiff alleges that correctional staff confiscated his legal papers. This allegation is construed as asserting an access to courts claim under the First Amendment. To state a claim of

denial of access to the courts, a plaintiff must allege facts showing that the defendant's conduct (1) "was deliberate and malicious," and (2) "resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Cancel v. Goord*, No. 00-CV-2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001); *see Christopher v. Harbury*, 536 U.S. 403, 414 (2002); *Lewis v. Casey*, 518 U.S. 343, 350-53 (1996). To demonstrate actual injury, a plaintiff must allege: (1) a valid underlying cause of action separate from the underlying First Amendment claim; and (2) frustration or hindrance of the litigation caused by the defendant's actions. *See Harbury*, 546 U.S. at 415.

Plaintiff challenges the seizure of his legal documents. He does not allege, however, that as a result of this seizure, he suffered an injury in any ongoing litigation. Moreover, because he alleges that he has a lawyer, this fact alone may be fatal to his access to courts claim, as "the provision of counsel can be a means of accessing the courts." *Benjamin*, 264 F.3d at 186; *Bourdon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004) (reaffirming that "the appointment of counsel can be a valid means of satisfying a prisoner's right of access to the courts"). The Court therefore grants Plaintiff leave to state facts in support of this claim, by detailing: (1) the nature of the underlying litigation, (2) how the confiscation of his legal papers affected that litigation, and (3) whether his lawyer is representing him in that litigation.

## F.    Property Claim

Plaintiff's allegation that correctional staff did not return all of his property, following the third search, does not state a claim. A claim for deprivation of property is not recognized as a violation of the Fourteenth Amendment's Due Process Clause if the state courts provide a remedy for the deprivation of that property. *See Hudson*, 468 U.S. at 533; *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) (citations omitted). The availability of an action in the New York State Court of Claims – as well as the availability of state law actions for negligence, replevin, or

conversion – all have been found to be adequate post-deprivation remedies for a deprivation of personal property claim. *See Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 499 (S.D.N.Y. 2014) (finding that New York state law provides an adequate post-deprivation remedy, that is, Section 9 of the Court of Claims Act); *Jones v. Harris*, 665 F. Supp. 2d 384, 401 (S.D.N.Y. 2009) (describing procedure available to challenge the deprivation of property for individuals who are incarcerated); *Jenkins v. McMickens*, 618 F. Supp. 1472, 1474 (S.D.N.Y. 1985) (noting that state tort action available to compensate plaintiff for alleged loss of property by city jail officials); *see also Moreno v. New York*, 69 N.Y.2d 432 (1987) (describing alternative state remedies to recover seized property discussed).

Here, Plaintiff contends that correctional staff did not return some of his property. Because he may challenge this alleged deprivation in the Court of Claims or by filing a lawsuit in state court, he cannot state a federal claim in this action. The Court therefore dismisses Plaintiff's federal claim asserting that correctional staff denied him his property for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## G.    Denial of Grievance Claim

Because Plaintiff names Sergeant Colby as a Defendant and asserts that he "lied on a grievance" (ECF 1, at 5), the Court construes this allegation as asserting a procedural due process claim under the Fourteenth Amendment.

The Due Process Clause "protect[s] a substantive interest to which [an] individual has a legitimate claim of entitlement." *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (internal quotation marks omitted, alterations added). While some "state laws may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests, state statutes do not create federally protected due process entitlements to specific state-mandated procedures." *Id.* (citations omitted).

Moreover, the Constitution does not require a prison grievance program. *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 380 (S.D.N.Y. 2011) (noting that prisoners do not have a "constitutional right to a prison grievance procedure or to have his grievances investigated") (internal quotation marks and citation omitted); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (finding that "correction officers' failure to properly address [the prisoner's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [the prisoner] was not deprived of a protected liberty interest"). Thus, any dissatisfaction with a grievance program does not implicate the Constitution.

Plaintiff alleges that Colby misrepresented the facts in his decision denying Plaintiff's grievance. This alleged misrepresentation does not amount to a deprivation of Plaintiff's rights under the Due Process Clause. This claim is grounded in state procedures, and Plaintiff must follow the grievance process to the final level of review, as he has done. *See* Orange County Sheriff's Office General Policy, Grievance Policy, § II (Dec. 7, 2021). Any additional challenges to Colby's decisions may be lodged in state court.

As Plaintiff cannot state a claim that his rights under the Constitution were violated by Defendant Colby's alleged misrepresentation in Plaintiff's grievances, or in any of his decisions, the Court dismisses all claims brought against this defendant for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## H.    Conditions of Confinement

The Court construes Plaintiff's allegation that he was denied a shower for four days as asserting a conditions-of-confinement claim under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (noting that the Fourteenth Amendment applies to

individuals who are in pretrial detention and the Eighth Amendment applies to individuals who are incarcerated pursuant to a judgment of conviction).

To state a conditions of confinement claim under the Fourteenth Amendment, a plaintiff must allege facts suggesting that a condition is objectively serious and that a defendant "should have known that the condition posed an excessive risk to health or safety." *Id.* For the objective element, plaintiffs allege "that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health" or safety, which "includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (citations omitted). "Thus, prison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted).

For the subjective element, a plaintiff must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. The mere negligence of a correction official is not a basis for a claim of a federal constitutional violation under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

Here, Plaintiff alleges that he did not have access to a shower for four days. This allegation does not state a conditions of confinement claim because Plaintiff cannot meet either element of this claim. First, the Court finds that this condition did not pose an unreasonable risk to Plaintiff's health or safety. Second, the complaint does not suggest that any officer was aware that denying Plaintiff access to a shower for four days placed him in any danger. Indeed, as noted

in Sergeant Colby's decision regarding Plaintiff's grievance (*see* ECF 1, at 14), correctional staff apparently complied with New York State Minimum Standard 7005.2(b) – which requires three showers a week – and therefore would not be aware of any harm to Plaintiff. The Court therefore dismisses this claim for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid First Amendment (religion and access to courts), Fourth Amendment (strip search and cell search), and Sixth Amendment (access to counsel) claims, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

## A.  John or Jane Doe Defendants

Plaintiff must name as the defendant(s) in the caption[4] and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does

---

[4] The caption is located on the front page of the complaint.  Each individual defendant must be named in the caption.  Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption.  If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list" on the first page of the Amended Complaint.  Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[5] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires.[6]

**B.    Statement of Claim**

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

---

[5] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty February 7, 2022, at Orange County Jail, during the 7-3 p.m. shift."

[6] Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## C.     New York Legal Assistance Group

Plaintiff may consult the legal clinic in this District that assists people who are parties in civil cases and do not have lawyers. The Clinic is run by a private organization called the New York Legal Assistance Group ("NYLAG"); it is not part of, or run by, the court (and, among other things, therefore cannot accept filings on behalf of the court, which must still be made by any *pro se* party through the Pro Se Intake Unit).

To receive limited-scope assistance from the Clinic, Plaintiff may mail a signed retainer and intake form to the NYLAG Pro Se Clinic at 40 Foley Square, LL22, NY, NY 10007. Once the paperwork is received, the Clinic will coordinate contact with the litigant. Once received, it may take up to two weeks for the Clinic to contact the litigant. Copies of the Clinic's flyer, retainer, and intake form are attached to this order.

## CONCLUSION

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-8056 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to

14

comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court dismisses the claims brought against Defendant Colby for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   May 30, 2023
         New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                    Middle Initial                    Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                              State                         Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name            Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                     State                Zip Code

Defendant 2:

First Name            Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                     State                Zip Code

Defendant 3:

First Name            Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                     State                Zip Code

Defendant 4:

First Name            Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                     State                Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

# NYLAG
### New York Legal Assistance Group

## LEGAL CLINIC FOR PRO SE LITIGANTS IN THE
## SOUTHERN DISTRICT OF NEW YORK

### LIMITED SCOPE LEGAL ASSISTANCE RETAINER AGREEMENT

You retain the New York Legal Assistance Group (NYLAG) to provide you with limited scope legal assistance through its Legal Clinic for Pro Se Litigants in the Southern District of New York (Clinic) under the terms set forth below.

### I. LIMITS OF ASSISTANCE

The Clinic agrees to provide only limited scope legal assistance in connection with your matter.

This means that:

- You remain a self-represented (pro se) litigant and are responsible for all aspects of your case. NYLAG is not your attorney of record in this matter. In the event that you are or become a party to a case in the Southern District of New York or any other forum, NYLAG will not enter an appearance or otherwise act on your behalf without expressly agreeing to do so and entering into a separate signed agreement with you. NYLAG has no obligation to enter into any such agreement.

- NYLAG has sole discretion to determine the specific type of services provided. These services may include providing advice and counsel about your case, explaining court orders and procedures, reviewing and commenting on your drafts, assisting with drafting, and discussing strategy.

- This retainer covers an initial consultation only. NYLAG can stop assisting you with this matter at any time for any reason consistent with the New York Rules of Professional Conduct.

- NYLAG has not agreed to represent or assist you on any other matter in the future. If NYLAG does agree to any representation on another matter, then a separate signed retainer agreement will be necessary.

- You may request but are not guaranteed subsequent appointments. NYLAG will only provide assistance on subsequent appointments if it provides you with confirmation to you of such assistance, via email or otherwise, with such additional assistance governed by the terms of this agreement, including that the assistance is for that consultation only and that NYLAG has sole discretion to decide whether it will provide any additional future consultations. You are responsible for and must meet all deadlines in your case, regardless of whether you are able to have an appointment with the Clinic.

### II. FREE ASSISTANCE, NON-ATTORNEY PROVIDERS, AND COMPETENCY

NYLAG does not charge for this assistance. You may be assisted by law students and/or paralegals under the supervision of an attorney consistent with the Rules of Professional Responsibility. NYLAG's assistance does not guarantee success or any particular outcome but that NYLAG will provide competent assistance.

### III. TERMINATION OF ASSISTANCE

Your participation is entirely voluntary, and you are free to stop receiving NYLAG's limited scope assistance at any time.  NYLAG may stop providing limited assistance at its sole discretion consistent with the New York Rules of Professional Conduct. If NYLAG chooses to stop providing limited assistance, it will provide notice by email, mail, or phone.

### IV. CONFIDENTIALITY

NYLAG will take all reasonable steps to maintain any information you provide as confidential.

### V.  REVIEW AND CONSENT

By signing and writing today's date below, you indicate that you: have read and understand this agreement; consent to the terms of this agreement; and understand the possible risks and benefits of proceeding with limited scope assistance.

If you have questions or concerns, please indicate on this form and someone will arrange to speak with you.


_____                    _____
Signature                                                  Date




**Once you have completed this form, please mail it and the completed demographic form to the New York Legal Assistance Group, Pro Se Clinic, 40 Foley Square, LL22, New York, NY 10007.**

Revised 10/30/22

**NYLAG**
New York Legal Assistance Group

**Name** _____          **Date of Birth** _____

**Facility** _____

**Identification #** _____          **Email (if available)**_____

**How did you hear about our clinic? (Circle One)**

| | | |
|---|---|---|
| Pro Se Intake Office | Order/Letter from the Judge | Conference/Hearing with the Judge |
| Pro Se Information Package | Website | Friend/Family |
| Other _____ | | |

**Ethnicity (Circle One)**

| | | |
|---|---|---|
| Asian/Pacific Islander | Hispanic | Caucasian |
| African American | Middle Eastern | Decline to Answer |
| African | Caribbean | |
| Native American | South Asian | |

**Education Level (Circle One)**

| | | |
|---|---|---|
| 8th Grade or Less | GED | 2-4 years of College/Vocational School |
| Some high school | College graduate | Decline to Answer |
| High school graduate | Graduate degree | |

**Gender:** _____

**SDNY Case Number:** _____

**Once you have completed this form, please mail it and the completed retainer to the New York Legal Assistance Group, Pro Se Clinic, 40 Foley Square, LL22, New York, NY 10007.**



Since 1990, NYLAG has provided free civil legal services to New Yorkers who cannot afford private attorneys.

# Free Legal Assistance for Self-Represented Incarcerated Civil Litigants in Federal District Court

The NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York is a free legal clinic staffed by attorneys, law students, and paralegals to assist those who are representing themselves or planning to represent themselves, including incarcerated litigants, in civil lawsuits in the Southern District of New York federal court, excluding habeas cases. The clinic is not part of or run by the court.

Even if a litigant has consulted with Clinic staff, unless they retain other counsel and that counsel enters a notice of appearance, they remain unrepresented; are responsible for doing whatever is necessary in connection with the case; and must still submit all court papers to the Pro Se Intake Unit, located in Room 105 of the Daniel Patrick Moynihan Courthouse, 40 Foley Square, New York, New York, or by following the court's instructions for filing via email as a pro se litigant.

## The Clinic Can:

- Assist with amending complaints and responding to motions to dismiss;
- Represent litigants for settlement purposes and, in limited circumstances, for depositions;
- Assist with written discovery;
- Recruit pro bono counsel for depositions and trial; and
- Assist with oppositions to summary judgment.

***Clinic staff cannot assist with habeas cases or criminal matters.***

NYLAG may also be unable to assist if it determines, in its professional legal judgement, that (i) you have refused to cooperate with the Clinic's counsel or follow the Clinic's advice; (ii) any assistance would be unreasonably difficult for NYLAG to carry out; or (iii) your case is or will become frivolous, unreasonable, groundless, or without merit.

## Contacting the Clinic:

To contact the clinic and request a copy of our retainer, please call (212) 659-6190 and leave a message or write to us at the following address:

> NYLAG Legal Clinic for Pro Se Litigants
> Thurgood Marshall Federal Courthouse
> Room LL22
> 40 Foley Square
> New York, NY 10007

Please mail a signed retainer back to the clinic at the above address. Once the paperwork is received, clinic staff will contact you. It may take up to two weeks.

Disclaimer: The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel, nor does it constitute advertising or a solicitation.

